UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRY DWAINE BELUE,<br><br>              Petitioner,<br><br>vs.<br><br>PAROLE AND PARDONS and ASHLEY DOWELL, Executive Director,<br><br>              Respondent. | Case No. 1:21-cv-00080-REP<br><br>**INITIAL REVIEW ORDER** |

      Petitioner Jerry Dwaine Belue, a prisoner in custody of the Idaho Department of Correction (IDOC), has filed an Amended Petition for Writ of Habeas Corpus challenging his parole revocation and the misspelling of his middle name on IDOC records. (Dkt. 9.) Federal habeas corpus relief is available to petitioners who are held in custody under a state court judgment that violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). The Court is required to review each newly-filed habeas corpus petition to determine whether it should be served upon the respondent, amended, or summarily dismissed. *See* 28 U.S.C. § 2243. If "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in

**INITIAL REVIEW ORDER - 1**

the district court," the petition will be summarily dismissed. Rule 4 of the Rules Governing Section 2254 Cases.

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 7.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Upon review of the record, the Court concludes that Petitioner may not proceed on his current pleadings, but may supplement or amend for further review.

## REVIEW OF PETITION

1.     **Background**

In his Amended Petition for Writ of Habeas Corpus, Petitioner brings the following claims. First, he asserts that IDOC officials continually spell his middle name incorrectly. " Dwaine" is correct. "Dewayne" is incorrect. He desires to have his name corrected on all of his IDOC records. The name error dates back to his 1998 battery charge or conviction for "tossing urine" on staff. (Dkt. 9, p. 4.)

Second, Petitioner asserts that the Idaho Commission on Pardons and Parole (ICPP) wrongfully revoked his parole: "Pardons and Parole have my name incorrectly misspelled to cover[] up the wrongful violation of my parole[] being revoked in 2017/December. My name is not an alias or Jerry Dwayne Belue." (*Id*., p. 3. He asserts that he did not commit a violation of his parole when he committed a misdemeanor crime while on parole. *Id*. He claims that prison officials have refused his request for a hearing.

**INITIAL REVIEW ORDER - 2**

Third, Petitioner vaguely asserts that fraudulent transactions have occurred on his prison trust account because of the incorrect name, causing him monetary loss. Fourth, his mail sent in an attempt to find out how to correct his name within the IDOC system has been confiscated by IDOC employees.

Fifth, Plaintiff alleges that staff are abusing his equal rights to buy items from the commissary while he is in isolation in the mental health unit. He says he "went to extremes to clarify [his] name," resulting in his placement there. (Dkt. 9, p. 5.) He alleges that these government acts violated his Sixth, Eighth, and Ninth Amendment rights.

As for remedies, Petitioner seeks to "have [his] name cleared and go back to normal sentencing." He also seeks punitive damages and reimbursement for his expenses to expose the computer fraud and gross negligence, and court costs and fees. (*Id*., p. 6.)

2.  Discussion

    A.  *Cognizable Claim*

Wrongful termination of a parole term granted in the course of a state court criminal sentence results in a deprivation of liberty that is protected by the Due Process Clause of the Fourteenth Amendment; therefore, such claims are subject to federal habeas corpus review. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).[1] Before a petitioner can

---

[1] However, because it is not part of a criminal prosecution, "the full panoply of rights due a defendant in a [criminal] proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. at 481. Rather, only "the minimum

**INITIAL REVIEW ORDER - 3**

bring a state parole revocation claim in federal court, however, he must exhaust his state court remedies. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b).

As a threshold matter, Petitioner has not alleged that he exhausted his state court remedies before filing his Petition. In Idaho, a wrongful parole revocation is raised in a state habeas corpus petition. It begins in the state magistrate court, and must be appealed to the state district court, and finally to the Idaho Supreme Court (with or without assignment to the Idaho Court of Appeals). *See, e.g., Craig v. State*, 844 P.2d 1371 (Idaho Ct. App. 1992). Therefore, Petitioner must file a supplement to his Amended Petition showing that he first presented his wrongful parole revocation claim to the Idaho Supreme Court in a procedurally proper manner. If not, he must show cause and

---

requirements of due process" apply, which include the following: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Id.* at 480.

**INITIAL REVIEW ORDER - 4**

prejudice or actual innocence[2] to proceed.

### B.   Non-cognizable Claims

Petitioner's other claims are not appropriate habeas corpus claims because they do not challenge the fact or length of his conviction. The United States Supreme Court has made it clear that a habeas corpus action is for the purpose of determining whether a prisoner is "entitled to immediate release or a speedier release from … imprisonment." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Habeas corpus cannot be used to challenge conditions of confinement. Rather, a civil rights lawsuit under 42 U.S.C. § 1983 is the correct vehicle for such claims.

The Court agrees that a person's true name is important and deserves to be respected, as Petitioner asserts. However, in law, that importance has its limits. *See generally Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)("Form is not to be insisted upon beyond the requirements of safety and justice."); *Bingham v. Bradley*, 241 U.S. 511, 517 (1916)(disfavoring defenses "savor[ing] of technicality" in extradition proceedings).

The United States Supreme Court has previously found that an arrest warrant was invalid when it used an entirely incorrect first name, "James" versus "Vandy M." *See West v. Cabell*, 153 U.S. 78, 85 (1894) ("[A] warrant for the arrest of a person charged

---

[2] It is not clear whether "actual innocence" in the context of parole revocation means that the petitioner must show he is actually innocent of the underlying crime for which he is serving his sentence, or merely that he is innocent of the act that caused the parole revocation. Most courts assume for the sake of argument that the parolee must show actual innocence of the parole violation. *See, e.g., Knowlin v. Tegels*, 2020 WL 3799077 (D.E.D.Wis. July 7, 2020); *Jones v. Crist*, 2006 WL 1195469 (D.N.D.Fla. Apr. 27, 2006).

**INITIAL REVIEW ORDER - 5**

with crime must truly name him, or describe him sufficiently to identify him."). However, when there is no dispute (even by the petitioner asserting that his name is incorrect) that the petitioner is the person whom legal documents describe and are intended for, a misspelling is considered a harmless error. *See Aguasvivas v. Pompeo*, 984 F.3d 1047, 1056–57 (1st Cir. 2021); *accord*, *United States v. Fawcett*, 115 F.2d 764, 767 (3d Cir. 1940) ("An indictment … is an accusation of a person of crime. It is an accusation against a person, and not against a name. A name is not of the substance of an indictment."); *Garrett v. United States*, No. CV 19-12359 (RMB), 2021 WL 1230064, at *2 (D.N.J. Apr. 1, 2021) (claims in amended petition for a writ of error coram nobis seeking correction of name dismissed for lack of subject matter jurisdiction).

Here, because the middle name misspelling issue is not of constitutional concern and Petitioner does not assert that he was not the person convicted of the underlying crime or the person whose parole was revoked, Petitioner must address that issue within the Idaho Department of Correction grievance system, and then in the Idaho state courts, not in federal court.

Similarly, complaints that personal property, such as lost commissary items or prisoner trust account mistakes, should be brought to the attention of prison officials through the prison grievance system, and then in a state court action, if necessary. Not every wrongful act by a government official is a constitutional violation. The United

States Supreme Court has made it clear that the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Moreover, even the intentional destruction of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. at 330-31.

Idaho has adopted the Idaho Tort Claims Act (ITCA), Idaho Code § 6-901, *et seq.*, to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, citizens can sue for and recover monetary damages from Idaho governmental entities for damages arising out of negligent or otherwise wrongful acts or omissions of the entity and its employees acting within the course and scope of employment. Idaho Code § 6-903(a). Again, Petitioner's remedy is in state court, not federal court, for loss of personal property, including trust account funds.

Petitioner asserts that his right to equal protection is being violated, because he does not have the same rights in the mental health isolation unit as he does in general population. While an equal protection claim invokes the Fourteenth Amendment of the federal Constitution, here, Petitioner's factual assertions fall short under the rational basis standard applicable to equal protection claims of that nature.

INITIAL REVIEW ORDER - 7

Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Petitioner has provided no factual allegations that a fundamental right was impinged or that a discriminatory intent was involved, such that a strict scrutiny analysis would apply. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (to avoid dismissal of an equal protection claim, a plaintiff must allege facts showing or intimating discrimination because of race, religion, or national origin); *Plyler v. Doe*, 457 U.S. 202, 224-225 (1982) (fundamental rights are analyzed under strict scrutiny).

Neither has Petitioner provided any facts under which he could proceed on a rational basis theory. Under that inquiry, to state an equal protection claim, Petitioner must allege plausible facts alleging that he is similarly situated to others and is being treated in a disparate manner, and that there is no rational basis for the disparate treatment. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993). It is obvious that persons in isolation in the mental health unit are not similarly situated to persons in the general population regarding activities and commissary purchases, because person in the mental health unit must have an added layer of protection in their environment so that they do

**INITIAL REVIEW ORDER - 8**

not harm themselves. A claim that Petitioner is being wrongfully held in the mental health unit because he is not mentally ill is not an equal protection claim, but falls under a different constitutional theory. Any federal constitutional violation claims must be properly exhausted in the prison administrative grievance system before they can be brought in a federal civil rights action under 42 U.S.C. § 1983, which is the correct procedural vehicle for bringing such claims (not a federal habeas corpus action).

Petitioner also asserts that his outgoing mail complaining of the misspelled name issue has been confiscated. Prisoners enjoy a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989). However, a prison may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Petitioner asserts that he "went to extremes" to try to correct the misspelling of his name, which caused him to be housed in the mental health isolation unit; if he acted unreasonably regarding his right to send mail, he has no civil rights claim.

In any event, he cannot assert a civil rights claim in a habeas corpus action. Any such claims, after proper exhaustion, must be brought in a separate action. Petitioner may file a amended civil rights complaint in this action if he has exhausted the administrative grievance procedure system and desires to proceed with those claims. The complaint will

**INITIAL REVIEW ORDER - 9**

then be severed into a new action. This process allows Petitioner to take advantage of the earliest date he raised the same claims for statute of limitations purposes.

**3.     Petitioner's Pending Motions**

Petitioner has requested appointment of counsel (Dkt. 10), but he has not yet stated a cognizable claim. The Court finds that Petitioner has the ability to set forth facts supporting his claims in simple terms with the instructions in this Initial Review Order, and, therefore, appointment of counsel is unnecessary to aid him in his pleadings. The Court will revisit Petitioner's request if he provides sufficient facts upon which to proceed and demonstrates that he has exhausted his state court remedies, without the need for Petitioner to file a new motion.

Petitioner has filed a Motion for Credit for Time Served (Dkt. 12), a Rule 8 Motion for Claim for Relief (Dkt. 15), and a Motion for Harmless Error to Compel (Dkt. 17). These requests go to the merits of his Amended Petition and cannot be addressed in motions. In addition, the Court is requiring Petitioner to clarify the merits of his claims and omit those that do not state federal habeas corpus claims for relief, such as the name misspelling issue, making some of Petitioner's requests moot.

Petitioner has also filed a Motion for Discovery to Compel Interrogatives [sic] or Questions. (Dkt. 14.) That motion will be denied, as Petitioner has not yet shown that he can proceed on any claim; therefore, no discovery is warranted.

**INITIAL REVIEW ORDER - 10**

**4.**     **Conclusion**

Petitioner may not proceed on his current pleadings. He shall file a supplement to his Amended Petition showing that he has exhausted his state court remedies or can show cause and prejudice or actual innocence for the procedural default of his claims if it is now too late to contest the parole revocation in state court. He must attach the pleadings and court orders from his state court case to his supplement. Alternatively, he may file a notice of voluntary dismissal of this case.

Petitioner may file an amended civil rights complaint in this case if he desires to proceed with civil rights claims regarding conditions of confinement and mail claims. If he does so, he will be required to pay the $350.00 filing fee for a civil rights action in incremental deductions from his prison trust account, and the Clerk of Court will be ordered to sever the complaint into a new civil rights case. Petitioner should not include name misspelling claims or personal property claims in a civil rights complaint filed in federal court, as those allegations fail to state a federal claim upon which relief can be granted.

**INITIAL REVIEW ORDER - 11**

# ORDER

**IT IS ORDERED:**

1. Petitioner's supplement with exhibits is due within **30 days** after entry of this Order. Failure to file a supplement as set forth in this Order will result in dismissal of this entire case without prejudice, without further notice to Petitioner.

2. If Petitioner desires to file an amended civil rights complaint, as explained above, he must do so within **30 days** after entry of this Order. The complaint must be accompanied by a current in forma pauperis application. A civil rights complaint form and in forma pauperis application are available in the prison legal resource center.

3. Petitioner's Motion to Appoint Counsel (Dkt. 10) is DENIED without prejudice.

4. Petitioner's a Motion for Credit for Time Served (Dkt. 12), Rule 8 Motion for Claim for Relief (Dkt. 15), and Motion for Harmless Error to Compel (Dkt. 17) are DENIED as inappropriate requests for relief that duplicate the requests in the Amended Petition.

5. Petitioner's Motion for Discovery to Compel Interrogatives [sic] or Questions (Dkt. 14) is DENIED as premature.

DATED: July 19, 2021

_Raymond Patricco_
Honorable Raymond E. Patricco
United States Magistrate Judge

**INITIAL REVIEW ORDER - 13**